UNITED STATES of America,
Appellee,

v.

Amy T. CRITZER, Appellant.

No. 73-2503.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1974.

Decided June 14, 1974.

Scott P. Crampton, Asst. Atty. Gen., U. S. Dept. of Justice (Meyer Rothwacks and John P. Burke, Attys., Tax Div., U. S. Dept. of Justice, and Keith S. Snyder, U. S. Atty., on brief) for appellee.

Charles A. Hobbs, Washington, D. C. (Orville D. Coward, Sylva, N. C., Wilkinson, Cragun & Barker, Washington, D. C., Coward, Coward & Jones, Sylva, N. C., Jerry R. Goldstein, Washington, D. C., and Roger L. Dillard, Jr., Sylva, N. C., on brief) for appellant.

Albert J. Ahern, Jr., Bailey's Crossroads, Va., on brief for amicus curiae, National Congress of American Indians, Inc.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Amy T. Critzer, an Eastern Cherokee Indian, was found guilty of four charges of willfully attempting to evade and defeat federal income taxes for the years 1967–1970 in violation of 26 U.S.C. § 7201. She was fined $10,000 and given a suspended sentence of three years conditioned upon her satisfying her civil tax liability. The government's proof established that she failed to report a portion of her income derived from the operation of a motel and restaurant, and from the lease of two gift shops and some apartments. All of defendant's businesses were located on land in which defendant had a "possessory holding" within the Eastern Cherokee Reservation in North Carolina. While the record amply supports the conclusion that the underreporting was intentional, the record also reflects that, concededly, whether defendant's unreported income was taxable is problematical and the government is in dispute with itself as to whether the omitted income was taxable. We therefore reverse the judgments of

guilt and direct defendant's exoneration from criminal liability.

## I.

The question of whether defendant's omitted income was taxable is a nice one, and one which we do not decide in these proceedings. The land from which the income was derived is held by the United States in trust for the Eastern Cherokee band under the Act of June 4, 1924, c. 253, 43 Stat. 376.[1] Under that Act, land can be conveyed—allotted—to individual Indians by the United States in fee simple, subject to restriction on alienation. However, no such conveyances to Eastern Cherokees have been made.[2] In the interim, defendant and others similarly situated have only a "possessory holding," described as the right of an individual Cherokee Indian to use and occupy a parcel of undivided land under regulations of the Tribe and Bureau of Indian Affairs.

Section 21 of the 1924 Act provided, in pertinent part:

all restricted allotments and undivided property *shall be exempt from taxation* until the restrictions on the alienation of such allotments are removed or the title of the band to such undivided property is extinguished (emphasis added).

It is this statutory language and the provisions of the General Allotment Act of 1887, 24 Stat. 388,—as extended by the Joint Resolution of June 19, 1902, and the Act of February 14, 1923, 42 Stat. 1246, as and interpreted by the leading case of Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956) (holding that the proceeds of sale of timber on trust land is tax exempt)— which are determinative of whether defendant's omitted income was taxable. See Stevens v. C.I.R., 452 F.2d 741 (4 Cir. 1971). The government asserts vigorously that it was, although the government freely concedes that the question is as yet undecided and there is no direct authority pointing to a ready answer. Conversely, defendant presents a non-frivolous argument that the income was exempt, although we stress that we express no view on the ultimate merit of either side.

Notwithstanding the government's present position on defendant's obligation to report and pay taxes on the business and rental income previously described, the record is undisputed that in 1945, and again in 1963, defendant was advised by the local superintendent of the Bureau of Indian Affairs that she was not taxable for rental income from her possessory interest in band property.[4] Indeed, with commendable forthrightness, the government in the present appeal has included in its brief a statement of the Department of the Interior as trustee, *inter alia*, for Eastern Cherokee Indians indicating that it still

1. A detailed history of the band and its land holdings is set forth in United States v. Wright, 53 F.2d 300 (4 Cir. 1931).

2. The Secretary of the Interior was first authorized to defer making allotments by the Act of March 4, 1931, 46 Stat. 1518, and then prohibited from making allotments by the Indian Reorganization Act of 1934, 48 Stat. 984.

3. Defendant is obliged to remit to the band twenty percent of the rent payable on a lease of an imprvoed possessory holding and thirty percent of the rent payable on a lease of an unimproved possessory holding. Whether the band pays taxes on its share is uncertain. Defendant asserts that it does not. In argument, counsel for the government disclaimed knowledge.

4. Prior to argument, plaintiff moved to supplement the record with newly discovered evidence, i.e., copies of various tax forms and an affidavit. The evidence purportedly showed that the I.R.S. had refunded taxes paid by another Eastern Cherokee Indian on rental income from possessory holdings which were located across the street from two of defendant's lots. Moreover, the neighboring Indian had been advised to seek the refund by the same I.R.S. agent who testified against defendant at her trial and who was well aware of the government's position regarding the taxability of her income. We deny the motion because we can decide the case on the present record without the persuasive corroboration that the tendered evidence, if true, would supply.

stands by the advice given defendant. The statement reads:

> [w]hile the issue is not free of all doubt, since there has been no definitive court holding, the Department of the Interior for legal and policy reasons believes that these possessory holdings are tax exempt to the same extent as trust and restricted allotments found on most other Indian reservations. . . . .
>
> Interior also believes that income from businesses conducted on tax exempt land, such as motels and restaurants, should be included in the principle of Squire v. Capoeman . . . . .

The statement also elaborates on the statutes and court decisions leading to the conclusions quoted.

## II.

We hold that defendant must be exonerated from the charges lodged against her. As a matter of law, defendant cannot be guilty of willfully evading and defeating income taxes on income, the taxability of which is so uncertain that even co-ordinate branches of the United States Government plausibly reach directly opposing conclusions. As a matter of law, the requisite intent to evade and defeat income taxes is missing. The obligation to pay is so problematical that defendant's actual intent is irrelevant. Even if she had consulted the law and sought to guide herself accordingly, she could have had no certainty as to what the law required.

It is settled that when the law is vague or highly debatable, a defendant—actually or imputedly—lacks the requisite intent to violate it. Perhaps the most dramatic illustration of this principle is found in the cases dealing with the taxability of embezzled funds. In C.I.R. v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946), the Supreme Court held that embezzled funds were not taxable income to the *embezzler*. The majority opinion rested largely on the rationale that (1) the embezzler had no claim of right to the embezzled funds,

and (2) he had a continuing unqualified obligation to return them. Six years later, after a change in personnel, the Supreme Court held that money obtained by *extortion* was taxable income. Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952). The majority opinion of Mr. Justice Burton, the lone dissenter in *Wilcox*, reasoned that since, as a practical matter, the extortionist enjoyed the economic benefit of the money, taxation was appropriate. The four Justices remaining from the *Wilcox* majority dissented, pointing out that the extortionist's situation was no different from the embezzler's. The extortionist "has neither legal nor equitable claim to the extorted money and is under a continuing obligation to return it to its owner." 343 U.S. at 139–140. Notwithstanding the force of this argument, the majority in *Rutkin* contented themselves with limiting *Wilcox* to its facts.

In light of the holding in *Rutkin*, the changed rationale, and the alignment of the new Justices, the tax exemption for *embezzled* funds created by *Wilcox* was subject to considerable doubt. Some commentators considered it effectively overruled. After *Rutkin*, courts of appeals made close distinctions to avoid following *Wilcox*. See, e. g., Macias v. C.I.R., 255 F.2d 23 (7 Cir. 1958); United States v. Wyss, 239 F.2d 658 (7 Cir. 1957); Briggs v. United States, 214 F. 2d 699 (4 Cir. 1954); Marienfeld v. United States, 214 F.2d 632 (8 Cir. 1954); Kann v. C.I.R., 210 F.2d 247 (3 Cir. 1953). Indeed, during this time a stronger case could be made *for* the taxability of embezzled funds than, it appears, can be made in the instant case for the taxability of income from possessory holdings.

However, in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), when the Supreme Court decided that embezzled funds were taxable income, it nonetheless reversed James' conviction under § 7201. The question of the appropriate disposition of James' conviction presented the Court with the issue of whether actual reliance on the

prior state of the law under *Wilcox* was an indispensable prerequisite to a successful defense or whether, even in its absence, a defense could be made to a prosecution under a vague statute, newly expanded by a clarifying construction, when criminal responsibility hung in the balance and it would have been impossible previously to ascertain with assuredness the scope and requirements of the statute. Dissenting, Justice Harlan, joined by Justice Frankfurter, argued that rather than reversing James' conviction, a new trial should have been ordered in which the trier of fact would consider any actual reliance on *Wilcox* as a matter bearing on willfulness. However, former Chief Justice Warren, in a three-Justice plurality opinion, wrote:

> We believe that the element of willfulness could not be proven in a criminal prosecution for failing to include embezzled funds in gross income in the year of misappropriation so long as the statute contained the gloss placed upon it by Wilcox at the time the alleged crime was committed. Therefore, we feel that petitioner's conviction may not stand and that the indictment against him must be dismissed. 366 U.S. at 221–222.

Thus, in the view of the plurality, "willfulness," as a matter of law, could not be shown in a prosecution under § 7201 given the uncertain state of the law of the taxation of embezzlement income created by *Wilcox*.[5]

Embezzlement cases reaching the federal courts after *James* where the operative facts occurred after *Wilcox* but before *James* lend strong support for our conclusion that pioneering interpretations of the tax law should not be sought or rendered in criminal prosecutions under § 7201, but rather in civil suits. Thus, in Geiger's Estate v. Commissioner of Internal Revenue, 352 F.2d 221 (8 Cir. 1965), cert. den., 382 U.S. 1012, 86 S.Ct. 620, 15 L.Ed.2d 527 (1966), a civil case, Judge (now Justice) Blackmun held that money embezzled by the assistant cashier of a bank was taxable income, distinguishing civil non-fraud deficiency cases from criminal cases where "willfulness" was an element.[6] On the other hand, in civil fraud and criminal cases, the courts ruled that the uncertainty created by *Wilcox* as a matter of law precluded a demonstration of "willfulness," without regard to the defendant's actual state of mind with respect to his knowledge or reliance on *Wilcox*. For example, in Kahr v. Commissioner of Internal Revenue, 414 F.2d 621 (2 Cir. 1969), the court addressed the issue of the applicability of the 50% civil fraud addition to funds embezzled from

---

5. Though Justices Black and Douglas thought *Wilcox* rightly decided, they agreed with the three Justices of the plurality that, given the new determination that embezzled funds were taxable, it would "be good governmental policy" not to apply the new interpretation to "past conduct." 366 U.S. at 224. However, rather than merely to limit the effect of the new decision to future conduct through prospective overruling, they questioned whether there should be any criminal liability at all since

> . . . a criminal statute that is so ambiguous in scope that an interpretation of it brings about totally unexpected results, thereby subjecting people to penalties and punishments for conduct which they could not know was criminal under existing law, raises serious questions of unconstitutional vagueness. 366 U.S. at 224.

We think that in essence the views of the dissenting Justices on the point in issue support those of the plurality so that it may be fairly concluded that five of the Justices in *James* ruled for various reasons that, as a matter of law, criminal sanctions under § 7201 should not be applied.

6. In civil non-fraud deficiency cases, the courts almost uniformly held that taxpayers similarly situated to James were taxable on embezzled funds. *See* United States v. Siano, 356 F.2d 927 (2 Cir. 1966); United States v. Goldberg, 330 F.2d 30, 39 (3 Cir. 1964) (dictum) cert. den., 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); Donohue v. Commissioner of Internal Revenue, 323 F.2d 651, 652 (7 Cir. 1963) (dictum), cert. den., 376 U.S. 911 (1964); Estate of Adame v. Commissioner of Internal Revenue, 320 F.2d 811, 814 (5 Cir. 1963); Stoller v. United States, 320 F.2d 340, 344, 162 Ct.Cl. 839 (1963); L. M. Moldron, 38 T.C. 907, 912 (1962); Leaf v. Commissioner of Internal Revenue, 295 F.2d 503 (6 Cir. 1961) aff'g 33 T.C. 1093.

an absent non-participating partner in a newspaper business by the active managing partner who had diverted to himself checks from several lucrative accounts. Noting that there was an "identical" requirement of proof of specific intent for assessment of the civil fraud addition, 26 U.S.C. § 6653, and for imposition of criminal sanctions under 26 U.S.C. § 7201, the court reasoned on the basis of *James* that the taxpayer, like James, "could not, in legal contemplation, have formed the intent necessary to commit a tax fraud." 414 F.2d at 627.

The Supreme Court's decision in *James* undoubtedly prevented criminal prosecutions under § 7201 involving similar facts from ever being brought. However, at least two cases involving the somewhat novel question of embezzling prior to *James* but filing of returns thereafter have been the subject of appellate review. *See* United States v. Dawson, 400 F.2d 194, 202 (2 Cir. 1968); Nordstrom v. United States, 360 F.2d 734 (8 Cir. 1966), cert. den., 385 U.S. 826, 87 S.Ct. 59, 17 L.Ed.2d 63 (1966). In these cases, the courts decided that the critical time for purposes of a tax evasion prosecution under § 7201 was the date the return was due, and therefore that convictions obtained on returns filed after *James* was handed down should be sustained. But it is significant that in both, the law applied by the trial judges was that irrespective of actual reliance on *Wilcox*, no prosecution under § 7201 could be maintained for funds embezzled in years not reportable prior to *James*. *See Dawson, supra*, 400 F.2d at 202 n. 7; *Nordstrom, supra*, 360 F.2d at 735.

We do not question that defendant may eventually be liable for the tax. The advice given by the Department of the Interior and its present position cannot estop the government from collection of revenues properly due; and when the question of defendant's tax liability is squarely reached, the views of that department may not prevail. But, for the reasons set forth, it is our conclusion that the appropriate vehicle to decide this pioneering interpretation of tax liability is the *civil* procedure of administrative assessment, with judicial review in the Tax Court, or payment and a suit for refund in a district court, at the election of the taxpayer; *not* the prosecution, with attendant potential loss of freedom of one who is the ward of her government.

Reversed.