UNITED STATES of America,

v.

Richard H. BAER, Defendant.

No. CR–86–174C.

United States District Court,
W.D. New York.

June 5, 1987.

---

Roger P. Williams, U.S. Atty. (Joseph B. Mistrett, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for the U.S.

Albrecht, Maguire, Heffern & Gregg (Carol E. Heckman, of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

Defendant Richard Baer is charged, in a one-count indictment, with a violation of the Internal Revenue Code, 26 U.S.C. § 7206(1). The indictment alleges that defendant willfully and knowingly failed to report real property which should have been included on his mother's estate tax return. Defendant has moved for a dismissal of the indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

Approximately one year before the death of defendant's mother in March of 1977, she transferred a parcel of land in Florida to defendant. When defendant filed an estate tax form on December 13, 1977, he did not include the property in Schedule G. This omission is the basis of the indictment.

The ground for the defendant's motion to dismiss is an alleged ambiguity in the tax laws at the time he prepared the estate tax return. Defendant claims that, as a matter of law, this uncertainty in the tax law precluded him from acting willfully, an essential element of the crime charged. *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976).

Section 2035 of the Internal Revenue Code covers estate tax requirements for a transfer of property without adequate and full consideration within three years prior to death. Before the passage of the Tax Reform Act of 1976, 26 U.S.C. § 2035 provided:

SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH.

(a) *General Rule*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) *Application of General Rule*—If the decedent within a period of 3 years end-

128

ing with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or lease made before such 3–year period shall be treated as having been made in contemplation of death.

Section 2035 was amended by the Tax Reform Act of 1976 to put an end to the "contemplation of death" rule and make all transfers within three years of death taxable. The Tax Reform Act provided:

Section 2035 (relating to transactions in contemplation of death) is amended to read as follows:

"SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH.

"(a) INCLUSION OF GIFTS MADE BY DECEDENT.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property.to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3–year period ending on the date of the decedent's death.

"(b) EXCEPTIONS.—Subsection (a) shall not apply to—

"(1) any bona fide sale for an adequate and full consideration in money or money's worth, and

"(2) any gift excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of gift tax) determined without regard to section 2513(a).

"(c) INCLUSION OF GIFT TAX ON CERTAIN GIFTS MADE DURING 3 YEARS BEFORE DECEDENT'S DEATH.—The amount of the gross es-

tate (determined without regard to this subsection) shall be increased by the amount of any tax paid under chapter 12 by the decedent or his estate on any gift made by the decedent or his spouse after December 31, 1976, and during the 3–year period ending on the date of decedent's death."

Pub.L. 94–455, 90 Stat. 1520, 1848.

Defendant does not claim that section 2035, either as it read before the 1976 Reform Act or as it was amended by the Act, is itself ambiguous. He focuses instead on the section of the 1976 Tax Reform Act which described when the amendments were to go into effect:

(d) EFFECTIVE DATES.—

(1) The amendments made by subsections (a) and (c)(1) shall apply to the estates of decedents dying after December 31, 1976; except that the amendments ... shall not apply to transfers made before January 1, 1977.

Pub.L. 94–455, 90 Stat. 1520, 1854.

Defendant's mother died in March of 1977. The transfer of property to defendant occurred in about April of 1976. According to defendant, since Congress did not explicitly state that the pre-amendment section 2035 applies to all transfers made before January 1, 1977, his responsibilities under the law were uncertain.

It is important to note that, under either version of section 2035, disclosure of the transfer of the land was required. Defendant does not dispute this. (See Item 8, affidavit of defendant's counsel, paragraphs 7 and 8). In addition, the instructions accompanying the tax form noted that *all* transfers made before January 1, 1977, and within three years of death must be disclosed in the return, whether or not the decedent's personal representative regards such transfers as subject to the tax (Item 12, defendant's memorandum, Exh. B).

Simply put, defendant's position is that, at the time he filed his estate tax return in December of 1977, the wording of the subsection headed "effective dates" could have been read to mean that there was *no* duty to report a transfer which occurred before

January 1, 1977. In other words, defendant argues that an individual filing an estate tax form for a decedent who died after December 31, 1976, could have concluded that 1) the amendment applied to the estate; 2) it did not apply to transfers occurring before January 1, 1977; and 3) the amendment effectively repealed the pre-amendment section 2035, and therefore, no law applied to transfers made before January 1, 1977.

The government argues that the law was not uncertain at the time defendant filed the return in December of 1977. The position of the government is that the pre-amendment section 2035 applies to all transfers occurring before January 1, 1977, no matter when the decedent died. The subsection headed "effective dates" simply states that the amendments do not apply to certain transfers; it does not repeal the pre-amendment section.

In support of his view that the law was uncertain, defendant points out that executors of estates have made the same argument in civil cases in which a transfer of land was made before January 1, 1977, but the decedent died after that date. The first revenue ruling on this issue was made in 1979. Courts later held that, for transfers occurring before January 1, 1977, the pre-amendment section 2035 applied. *Estate of Gill v. C.I.R.*, 79 T.C. 437 (1982), *aff'd per curiam*, 711 F.2d 54 (5th Cir.1983), and *Hutchinson v. C.I.R.*, 765 F.2d 665, 669–70 (7th Cir.1985).

■ Of course, the focus must be upon the state of the law at the time plaintiff filed the return. If, as a matter of law, the applicability of the tax law was uncertain, the indictment should be dismissed. *United States v. Ingredient Technology Corp.*, 698 F.2d 88, 97 (2nd Cir.1983), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366. *See also United States v. Mac-Kenzie*, 777 F.2d 811 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2889, 90 L.Ed.2d 977 (1986).

■ The certainty and clarity of the law at issue is a legal question to be resolved by the court. In making this determination, the actual state of mind of the defendant is irrelevant: "[I]f the tax laws are uncertain, an indictment should be dismissed, regardless whether the taxpayer acted in good faith." *MacKenzie*, 777 F.2d at 817, *citing Ingredient Technology Corp., supra*.

■ I find that the law was not uncertain at the time defendant filed the tax return and deny the motion to dismiss the indictment. Congress intended that the amendment apply to the estates of those dying after December 31, 1976. It made an exception in the case of transfers occurring before January 1, 1977, noting the amendment is not to be applied to those transfers. As was explained by the tax court in *Estate of Gill v. Commissioner, supra*, the answer to any alleged uncertainty as to which, if any, law applied is provided by general legal principles:

> New legislation can only amend or replace old legislation to the extent that the new legislators authorize the new bill to take effect. Since the new legislation by its own terms specifically never became effective as to transfers prior to January 1, 1977, the old section 2035(a) was never amended or repealed as to such transfers and therefore continues in effect as to them.

*Hutchinson v. C.I.R.*, 756 F.2d at 669, *quoting Estate of Gill v. Commissioner, supra* at 441.

The court in *Hutchinson, supra* at 665, explained why the interpretation urged by defendant is severely strained. Although *Hutchinson* is a civil case and was decided years after Mr. Baer filed his return, the court's analysis of the state of the law in December of 1977 is helpful. In rejecting the estate's argument, the *Hutchinson* court noted that the amendment to section 2035 was enacted to prevent the evasion of taxes and to end litigation as to whether a transfer was made "in contemplation of death." The amendment simply required all transfers of property for less than fair consideration within three years of death to be included in the gross estate, removing from the taxpayer any argument based upon the motive of the decedent.

"Given this broadening· of the statute's scope, Congress surely did not create a loop-hole class of people who would not be subjected to either version of the statute." *Id.* at 669. Such a result, in the court's opinion, would be "irrational." *Id.* at 678.

Furthermore, the fact that attorneys for some estates had raised the same point which defendant makes does not establish that the statute was uncertain as a matter of law in December of 1977. Attorneys make arguments ranging from the astute to the absurd; the mere fact that arguments have been made is no basis for finding a statute uncertain as a matter of law. The *Hutchinson* court clearly considered the position advanced by the estate tax lawyers to have been unsound—both at the time it was presented as well as at the time of the court's decision. In addition, there is no evidence that, in December 1977, there was a level of legal debate which could have potentially confused or mislead the public.

Defendant cites several criminal cases in support of his position. All, however, differ in significant ways from the case at bar. In a series of Supreme Court cases involving the taxability of money obtained through extortion or embezzlement, the Court noted that the element of willfulness cannot be proven when there were apparently conflicting holdings in Supreme Court cases at the time of the alleged offense.

In *C.I.R. v. Wilcox*, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946), the Court had held that embezzled funds were not taxable income to the embezzler. The continued viability of this holding was questioned after the Court held money obtained from extortion *was* taxable. *Rutkin v. United States*, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952). In 1961, the court formally overruled *Wilcox* and found embezzled funds to be taxable. *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

Yet, the court held that, during the time *Wilcox* was still the law, the element of willfulness could not be proven in a crimi-

nal prosecution for failing to report embezzled funds as income. 366 U.S. 221–22, 81 S.Ct. at 1056–57. The indictment against James was dismissed. *See also United States v. Dawson*, 400 F.2d 194 (2d Cir. 1968), *cert. denied*, 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969). In the case at bar, there were no IRS rulings or court holdings which could mislead potential defendants and make the law at issue uncertain.

Defendant also cites several criminal tax cases in which there was substantial uncertainty as to whether the property or income was taxable. In *United States v. Critzer*, 498 F.2d 1160 (4th Cir.1974), the defendant had been found guilty of four counts of tax evasion. In that case, defendant, an American Indian, was twice advised by the Bureau of Indian Affairs that her rental income, derived from reservation lands held in trust for the Eastern Cherokee band, was not taxable. At the time of the appeal, the taxability of the lands was "so uncertain that even co-ordinate branches of the United States Government plausibly reach different conclusions." *Id.* at 1162. The defendant's conviction was reversed and the indictment dismissed. The court held that, as a matter of law, the defendant could not be guilty of willfully evading taxes when the law was so uncertain that she could not have formed any conclusions as to what the law required even if she had researched the issue. "It is settled that when the law is vague or highly debatable, a defendant—actually or imputedly—lacks the requisite intent to violate it." *Id.* at 1162.

In *United States v. Garber*, 607 F.2d 92, 98 (5th Cir.1979 *en banc*), the court adopted the analysis of the *Critzer* opinion. There, the issue was the taxability of proceeds from the sale of blood plasma. The court termed it an "uncharged area in tax law." After being presented with substantial, non-frivolous arguments on both sides of the issue, the court noted that a criminal prosecution is not vehicle for "pioneering interpretations of the tax law." *Id.* at 100.[1]

---

1. The Second Circuit has declined to follow *Gar-* *ber* insofar as it permitted the jury to hear

The legality of a type of tax shelter program was at issue in *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir.), *cert. denied*, 466 U.S. 980, 104 S.Ct. 236, 80 L.Ed.2d 835 (1983). The legality of advocating the creation of a lawful foreign trust corporation as a tax shelter was "completely unsettled" at the times alleged in the indictment. The court found that there had been no fair warning that those who engaged in these activities might be subjected to criminal sanctions. *Id.* at 1428–29. The convictions were reversed.

A similar result was reached in *United States v. Mallas*, 762 F.2d 361, 363 (4th Cir.1985), which involved a technical, "highly debatable" question involving advance royalties on warranted coal reserves. In other cases, however, challenges based upon alleged uncertainties in the law were rejected on the ground that the activity in question was clearly taxable. *United States v. Ingredient Technology Corp.*, 698 F.2d 88 (2d Cir.1983); *United States v. Crooks*, 804 F.2d 1441, 1448–49 (9th Cir. 1986).

 Defendant also urges that a November 15, 1979, report prepared by Sandra Buttrick, an estate attorney for the government, demonstrates that even the IRS was uncertain about the taxability of the land at issue. *See* Item 16, Exh. A, p. 3. Defendant notes that the attorney listed the Florida land as a "non-fraud" item requiring "potential adjustment *if transfer includable.*" (Emphasis added.) However, the auditor's uncertainty does not in any way establish that the law itself was uncertain. The auditor may not have had enough information at that time to make a determination.

Defendant also points to the language of the tax form itself. He claims the instructions under Schedule G of the estate tax return at the time he completed it were confusing and ambiguous. Defendant's arguments as to his ability or inability to comprehend the instructions on the tax re-

turn may be left to the jury on the issue of willfulness.

Defendant's motion to dismiss the indictment is denied. The court understands that there is still an outstanding motion for the suppression of certain statements. Defense counsel was to advise the court as to whether that motion will be pressed. A meeting will be held with counsel on June 15, 1987, at 9 a.m.

So ordered.

---

conflicting expert opinion as to the state of the law for the purpose of resolving the factual question as to willfulness. *Ingredient Technolo-*

*gy Corp.*, 698 F.2d at 97. That issue is for the court.