**UNITED STATES of America**

**v.**

**James Eugene LEWIS, Jr., Thomas Calvin Dunlap, Sr., Lonnie Glen Schmidt.**

**Nos. C–CR–89–114–01 to C–CR–89–114–03.**

United States District Court, W.D. North Carolina, Charlotte Division.

Feb. 14, 1990.

J. Christopher Belcher, for U.S.

Kenneth P. Andresen, Charlotte, N.C., for James Eugene Lewis, Jr.

James F. Wyatt, III, Charlotte, N.C., for Thomas Calvin Dunlap, Sr.

George V. Laughrun, II, Charlotte, N.C., for Lonnie Glen Schmidt.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendants' Motions, filed February 6, 1990, to Dismiss the Indictment on the Basis of vagueness and a fatal defect. The Government filed a response on February 9, 1990.

Defendants are charged in a multi-count indictment which alleges conspiracy to violate tax laws. The indictment also alleges Defendants conspired to tamper with Grand Jury witnesses. The Government believes Defendants promoted invalid trusts in order to illegally shelter income from the Internal Revenue Service.

This matter is scheduled for trial during the February 1990 Charlotte Criminal Term. The record in this case, which the Court has carefully reviewed, indicates that the indictment was handed down by the Grand Jury on August 10, 1989. At Defen-

dants' arraignments in late August of 1989, the Magistrate set a deadline of 15 days following the arraignment date in which all pretrial motions were to be filed. On September 12, 1989, the deadline was extended for 30 days. Thereafter, a second extension was granted, giving Defendants until November 1, 1989 to file pretrial motions. The case file and docket sheets are devoid of further extensions. Moreover, the Magistrate has told the Court that no further extensions were orally granted off the record.

■ Rule 12(b) of the Federal Rules of Criminal Procedure applies to the filing of pretrial motions. The rule provides that certain motions *must* be raised prior to trial. Those motions include:

(1) Defenses and objections based on defects in the institution of the prosecution; and

(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings).

Moreover, Rule 12(c) provides that the Court may set a time for the making of pretrial motions. Failure to bring motions in a timely manner constitutes waiver unless the Court, for cause shown, grants relief of the waiver. *See* Rule 12(f) of the Federal Rules of Criminal Procedure.

The purpose of Rules 12(c) and 12(f) is to encourage the making of motions prior to trial whenever possible. *See* Wright, *Federal Practice and Procedure: Criminal 2d,* § 192 at 690 (1982) (hereinafter "Wright"). Those motions listed in Rule 12(b) must be filed within the time permitted under Rule 12(c). Rule 12(f) provides that they are waived if not made at that time. *See* Wright at 697.

■ Among the matters falling within Rule 12(b)(1) or Rule 12(b)(2), and thus waived if not timely raised, are irregularities in obtaining the indictment or information. *See* Wright at 699. However, a motion that argues that the indictment fails to state a charge may be raised at anytime, even if raised for the first time on appeal. *See* Wright at 694. In particular, a motion that attacks the indefiniteness of the allegations is an example of failure to charge an offense. *See* 8 *Moore's Federal Practice,* § 12.03[1] at 12–20 (1989); *cf. United States v. Pupo,* 841 F.2d 1235 (4th Cir. 1988) (defense that indictment failed to state necessary scienter element could be raised at anytime). Although the motion in this case does not specifically state that the indictment fails to charge an offense, the Court believes the motion sufficiently alleges the indictment is indefinite, and thus permits the Court to consider the motion at anytime.

■ As to Defendants' first argument, they contend that the law on which counts one through ten are based is vague and highly debatable. Defendants rely on a series of cases holding that "when the law is vague or highly debatable a defendant—actually or imputedly—lacks the requisite intent to violate it." *United States v. Critzer,* 498 F.2d 1160, 1162 (4th Cir.1974); *see also United States v. Mallas,* 762 F.2d 361 (4th Cir.1985); *United States v. Dahlstrom,* 713 F.2d 1423 (9th Cir.1983). Defendants assert that the transfer of assets to an unincorporated business organization (U.B.O.) is not inherently unlawful. Furthermore, the subsequent "business expenses" that were deducted once the assets were transferred to the U.B.O. is an area of the law which must be judged on a case-by-case basis. Hence, Defendants argue that they lacked notice that their actions in promoting the U.B.O.'s violated the tax laws.

The Court is familiar with the *Mallas* argument. Almost every defendant that is accused of promoting bogus tax shelters attempts to escape prosecution by raising this argument. But as the Government notes in its response, "neither *Critzer* or *Dahlstrom* nor *Mallas* represents the proposition that anyone who engages in a tax scheme of moderate complexity is immune from criminal prosecution." Government's Response of February 9, 1990 at 2.

The indictment in this case alleges that Defendants set up sham trust entities to conceal taxable income and assets from the Internal Revenue Service. The Government contends that Defendants assured potential investors that by purchasing a U.B.O. and transferring assets to the trust that no income tax would be owed. The Government believes that these actions by Defendants violated 18 U.S.C. § 371, 26 U.S.C. § 7206(2), and 26 U.S.C. § 7203—conspiracy to impair the I.R.S. in the collection of federal income taxes by the use of sham trusts.

The Court believes that this case is readily distinguishable from *Mallas* and the cases leading up to it. The court in *Mallas* found that the tax shelter program based on deductions allowed for participants in coal-mining enterprises was permitted under the applicable regulations. Because the regulations left room for the shelter, the court held that a criminal prosecution of a "vague or highly debatable" area of the law violated the defendant's right to be put on notice of the crime in which he was charged.

In this case, the Government does not assert that the very nature of the shelter—a trust entity—is illegal. Rather, the Government contends that when a person places all of his assets in a trust for the sole purpose of avoiding tax liability that the particular use of the trust becomes an illegal sham. Obviously, the determination of whether the use of the trust in this instance amounted to a sham is a factual determination for the jury rather than a legal determination for the Court. Thus, the Court believes that this case does not come under the doctrine enunciated in *Mallas.*

■ Even if this case involved a determination of the legal nature of the trust, the Court believes Defendants had adequate notice that the trusts were shams. The Government persuasively cites numerous cases holding that these type of trusts have been routinely disallowed since 1931. *See* Government's Trial Brief of February 7, 1990 at 10; *United States v. Basye*, 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973); *United States v. Brodie*, 858 F.2d 492, 497 (9th Cir.1988); *United States v. Krall*, 835 F.2d 711, 714 (8th Cir.1987); *United States v. Buttorff*, 761 F.2d 1056 (5th Cir.1985). Therefore, it is apparent that this case differs from *Mallas* where the defendants had not been given "fair warning ... of what the law intends to do if a certain line is passed." *See Mallas*, 762 F.2d at 364–65 (citing *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931) (Holmes, J)). In this case, case law has developed to notify Defendants that the type of trusts described in the indictment are suspect. Hence, the Court concludes that Defendants' reliance on *Mallas* is without merit.

■ Defendants' second argument to dismiss the indictment is based on the Defendants' belief that the indictment contains a fatal defect—that the conduct alleged in the indictment was lawful. In support of their motion, Defendants cite the case of *Frank Lyon Co. v. United States*, 435 U.S. 561, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978). In that case, the Supreme Court established a two-tiered test required for showing a transaction is a sham. First, the Government must show that no non-tax business purpose exists. Second, the Government must establish that the transaction has no economic substance. Because the indictment states that Defendants told potential investors that the trusts would place assets beyond the reach of potential creditors, assure total privacy, and provide a 23% return on investment, Defendants argue that the indictment itself establishes a valid business purpose existed for the trusts.

■ From the outset, the Court notes that the holding in *Frank Lyon Co.* and other cases cited by Defendants involved civil and not criminal liability. Moreover, the determination of whether a legitimate business purpose existed is an issue of fact. *See Rice's Toyota World, Inc*, 752 F.2d 89, 92 (4th Cir.1985). The fact-finder is required to make an objective analysis of whether the transaction amounted to a sham. *Id.* at 94–95.

■ In this case, dismissal of the indictment is clearly inappropriate based on the rationale of *Frank Lyon Co.* A factfinder is required to make an objective determination of whether a legitimate business purpose existed for the trust. In this case, the determination of fact is left in the providence of the jury. Hence, Defendants' Motion would have the Court usurp a jury function.

Moreover, the determination of whether a legitimate business purpose exists requires an objective analysis. In this case, Defendants cite portions of the indictment where *Defendants represented* to potential investors that a legitimate business purpose existed. Such representations can hardly be characterized as an objective determination that a valid business purpose existed. The Court suspects that these Defendants may have represented to investors that the moon was made of blue cheese if to do so would have facilitated additional sales. However, that possible representation would be no more objective than the representations Defendants actually made.

The Court believes that Defendants' reliance on *Frank Lyon Co.* is misplaced. The jury and not the Court is the proper entity to decide whether the trusts constituted a sham. The Court does not believe the indictment is fatally defective.

Defendants have requested a hearing on this matter. The Court is convinced that the Motion is meritless. Therefore, a hearing is unnecessary.

NOW, THEREFORE, IT IS ORDERED that Defendants' Motion to Dismiss the Indictment Based on vagueness and a fatal defect be, and hereby is, DENIED.