968 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee/Cross Appellant,
v.
Richard T. HARRIS, Defendant-Appellant/Cross-Appellee.
 Nos. 91-5777, 91-5778 and 91-5797.
 United States Court of Appeals, Sixth Circuit.
 July 14, 1992.
 
 Before KEITH and SUHRHEINRICH, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Richard T. Harris, defendant-appellant/cross-appellee, appeals his conviction and sentence for conspiracy to defraud the United States in violation of 18 U.S.C. § 1341. The United States, plaintiff-appellee/cross-appellant, challenges the sentence imposed pursuant to U.S.S.G. § 3B1.1.
 
 I.
 
 2
 Richard T. Harris, defendant-appellant/cross-appellee [hereinafter, "Harris" or "defendant"], is the owner, operator, and president of Harris Tube Pulling & Mfg., Inc. ("Harris Tube"), a small Tennessee-based company. On March 20, 1987, Harris Tube entered into a contract with the United States Army Tank Automotive Command ("Tacom") to manufacture 816 right angle gear boxes, also known as mechanical housings, that contain gears of the axial fan used in the cooling system of the Bradley Fighting Vehicle. In order to correct a leakage problem with the units around the area of the access cover, Harris ordered his subordinates to use glue in spite of the fact that according to the government contract specifications and the assembly procedure developed by the company and approved by the government inspector, the cover was to be bolted down to the housing. Chris Blenstroub, Harris Tube's quality control manager, protested to Harris that this was in violation of the contract and not how Tacom wanted the unit assembled. However, the glue was used and subordinates were instructed to hide the glue from the government inspector. Thereafter, throughout the production process, workers hid the glue. Defendant Harris also ordered that scrapped housings be repaired with aluminum filler in violation of the contract and 50 access covers that had failed salt spray testing were used in the housings in violation of the contract.
 
 
 3
 On August 1, 1989, Harris fired Blenstroub, who then immediately became a whistle blower and met with the government inspector. Subsequent inspection by the government indicated that the units had glue around the access covers and several units had aluminum filler.
 
 
 4
 The grand jury for the Eastern District of Tennessee indicted Richard Harris, Fred Hollingsworth, Harris Tube's production supervisor, and Harris Tube Pulling & Mfg., Inc. in an eleven count indictment on October 30, 1990 for conspiracy and mail fraud. A trial began on February 5, 1991, and on February 13, 1991, the jury returned a guilty verdict against each defendant on ten counts of mail fraud.[1]
 
 
 5
 On May 29, 1991, Harris Tube was fined $10,000 on each count concurrently and ordered to pay one-third of the repair costs of $13,947 as restitution and a $500 special assessment. Richard T. Harris was sentenced to 18 months incarceration, a $10,000 fine, a $500 special assessment and two-thirds the cost of restitution. Mr. Hollingsworth was sentenced to eight months incarceration and a $500 special assessment.
 
 
 6
 Defendant Harris timely filed this appeal.
 
 II.
 
 7
 We will first address defendant Harris's argument that there was not sufficient evidence of his intent to defraud the United States. Defendant attempts to raise on appeal the issue of whether he violated Harris Tube's contract with Tacom by using glue when the contract did not specifically prohibit the use of glue.
 
 
 8
 Defendant's attempt is to no avail. Testimony at trial indicated that the specifications provided by the government and the assembly procedure approved by the government indicated that bolts were to be used to attach the cover to the housing. Testimony at trial also indicated that Harris gave orders to use glue despite Blenstroub's warning that it violated the contract and that the workers then hid the glue from the government inspector. This behavior is a far cry from the cases on which Harris attempts to rely-- United States v. Critzer, 498 F.2d 1160, 1162 (4th Cir.1974); and United States v. Mallas, 762 F.2d 361, 363 (4th Cir.1985), in which it was found that the unsophisticated defendant lacked the requisite intent to violate a vague or highly complicated tax statute. In the present case, there is sufficient evidence of Harris's intent to deceive the government by using glue.
 
 
 9
 On appeal, the evidence against Harris must be taken in the light most favorable to the government and the conviction upheld if any rational juror could find defendant guilty. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In view of this standard, there is sufficient evidence to sustain a conviction based on the testimony of Blenstroub and other subordinates indicating that defendant Harris knowingly improperly used glue when it was not specified in the contract, directed his subordinates to hide the glue, and violated the contract by repairing defective housings with aluminum fillers and using access covers that had not passed the salt-spray test. This testimony was supported by the outcome of the tests the government performed on the housings. For these reasons, the district court is affirmed on this issue.
 
 II.
 
 10
 We will next address the issue the government raises on cross-appeal--whether the district court's finding that there were only four criminally responsible participants was clearly erroneous. The United States contends that the district court erroneously applied U.S.S.G. § 3B1.1, because there were five or more criminally responsible participants. Therefore, according to the government, defendant's sentence should have been enhanced by four points instead of by only two points, which is what the district court determined was the correct enhancement under U.S.S.G. § 3B1.1(c) based on four participants.[2]
 
 
 11
 Defendant Harris argues that this court is precluded from hearing this cross-appeal because the government failed to object to the district court's application of U.S.S.G. § 3B1.1 at the district court level.
 
 
 12
 We agree with the government that it had no indication that the district court was going to deviate from the presentence report's recommendation of a four-point enhancement in regard to U.S.S.G. § 3B1.1 based on how many participants were involved and had no opportunity to object to the two-point enhancement prior to the district court's ruling on this issue. In this circumstance, there is no waiver of the government's right to appeal a guideline issue, which is granted pursuant to 18 U.S.C. § 3742(b). United States v. Hickey, 917 F.2d 901, 906 (6th Cir.1990); see also Burns v. United States, 111 S.Ct. 2182, 2187 (1991); United States v. Rodriquez, 938 F.2d 319, 321 n. 3 (1st Cir.1991). We, therefore, will address this issue on appeal.
 
 
 13
 United States Sentencing Guideline § 3B1.1 states:
 
 Aggravating Role
 
 14
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 15
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 16
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 
 
 17
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 
 Commentary
 Application Notes:
 
 18
 1. A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant.
 
 
 19
 2. In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.
 
 
 20
 3. In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.
 
 
 21
 This court has stated the following in regard to this guideline. "[M]ere direction by a criminally culpable individual falls short of satisfying the requirements of section 3B1.1.... Absent proof of the culpability of [alleged participants], section 3B1.1(c) does not apply." United States v. Kotoch, 954 F.2d 340, 342 (6th Cir.1992).
 
 
 22
 In the present case, the United States argues that the district court erred in finding that there were only four, not five or more, criminally responsible participants who were directed by defendant, because those workers who hid the glue were knowing participants in the fraud and were criminally responsible participants under U.S.S.G. § 3B1.1(a). Therefore, the government argues, defendant's sentence should have been enhanced four levels, not just two levels.
 
 
 23
 However, this court has held that absent proof of culpability of the requisite number of "participants," this guideline does not apply. United States v. Carroll, 893 F.2d 1502, 1509 (6th Cir.1990). We disagree with the government's argument that those who hid the glue should be considered criminally responsible participants even if the proof were to show that these workers were putting their heads in the sand. Although under Application Note One of the guideline, a conviction is not required for one to be considered a participant, criminal culpability or responsibility requires the requisite intent, which, in the present case, we do not believe has been proven in regard to the workers who allegedly hid glue. The district court's finding indicates that at trial the court did not believe that the government had established by a preponderance of the evidence that there were more than four criminally responsible participants who had the requisite criminal intent. We do not believe the district court's determination that there were not more than four criminally responsible participants can be said to be clearly erroneous. See, United States v. Silverman, 889 F.2d 1531, 1540 (6th Cir.1989) (finding of fact under Guideline 3B1.1 subject to clearly erroneous standard of review). We, therefore, affirm the district court on this issue.
 
 IV.
 
 24
 Finally, we must decide whether there should be a remand to determine if the criminal activity was "extensive."
 
 
 25
 The United States argues that because under Harris's direction, all the workers hid the glue from the government inspector, the criminal activity was extensive within the meaning of U.S.S.G. § 3B1.1(a).
 
 
 26
 The district court did not make specific findings in this regard. However, the district court indicated that it did not find the criminal activity extensive because the damage suffered by the government was limited to $13,947 on a $672,000 contract and the housings were as specified in all other respects. Application Note Three indicates that one factor to consider in applying guideline 3B1.1(a) is the nature and scope of the illegal activity. The district court implicitly determined that the nature and scope was not so extensive to warrant a further two-point enhancement. We do not believe this conclusion can be said to be clearly erroneous.
 
 
 27
 For these reasons, the judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 The elements of a mail fraud violation were stated by the district court charge as follows: (1) "that the defendants knowingly and willfully devised or intended to devise a scheme or artifice to defraud or to obtain money and property by means of false and fraudulent pretenses, representations or promises; (2) that the defendants did so with intent to defraud; and (3) that for the purposes of executing such scheme or artifice or attempting so to do that the defendants knowingly used the mails or caused the mails to be used."
 
 
 [2]
 The district court found that for sentencing purposes under Guideline 3B1.1, there were four criminally responsible participants: Harris (owner of the company); Hollingsworth (production supervisor); Blenstroub (quality control manager) and Henry Rymer, a quality control inspector