**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald W. PLEWNIAK, Defendant–
Appellant.**

**No. 91–3541
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 2, 1991.

Cheryl J. Sturm, West Chester, Pa., for defendant-appellant.

Peter G. Strasser, Asst. U.S. Atty., Harry Rosenberg, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before THORNBERRY, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

THORNBERRY, Circuit Judge:

On February 26, 1987, Ronald Plewniak was convicted of federal crimes arising out of a conspiracy to defraud several United States sugar refineries. He was sentenced to six years imprisonment followed by five years of probation. The district court also imposed restitution in the amount of $1.4 million. Three years after his conviction, Mr. Plewniak filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, claiming that a conflict of interest rendered his defense counsel ineffective, and that the district court improperly imposed restitution. The district court denied the motion without an evidentiary hearing. On appeal, Mr. Plewniak challenges the district court's rulings on the claims presented in his § 2255 motion as well as the district court's refusal to hold an evidentiary hearing on the motion.

## I. BACKGROUND

On February 20, 1986, Ronald Plewniak was indicted for violations of 18 U.S.C. §§ 2, 371, 545, 550, 1343, and 49 U.S.C.App. § 121. The crimes arose out of a scheme to divert sugar to the U.S. domestic sugar market after purchasing the sugar for exportation and sale outside the United States. Mr. Plewniak made an enormous profit on this diversion of sugar because U.S. agricultural subsidies kept domestic sugar prices substantially higher than world market sugar prices.

The illegal sugar transactions began with the purchase of sugar from a domestic sugar refinery. Mr. Plewniak or one of his conspirators would falsely represent to the selling refinery that they were buying sugar for exportation and sale in the world market. Mr. Plewniak and his conspirators would then pay the lower world market price for the sugar, now designated "export sugar," and Mr. Plewniak would give fraudulent ocean bills of lading to the refiner showing that the sugar had been exported. These bills of lading entitled the refiner to a "drawback" under U.S. agricultural programs equal to the difference between the domestic price of sugar, which was then approximately $27 per hundred weight, and world market price for sugar, approximately $12 per hundred weight. The subsidy or "drawback" caused the refiner to realize the domestic price of sugar on the sale.

Mr. Plewniak generated a huge profit by reselling the export sugar in the domestic market after purchasing it at the lower world market price. In each of the transactions for which he was indicted, Mr. Plewniak sold the export sugar to Lentz Milling Company of Reading, Pennsylvania for approximately $23 per hundred weight, a price somewhat lower than the domestic price but still much higher than the price at which the sugar was purchased. Mr. Plewniak profited by more than $1.4 million in the transactions for which he was indicted.

## II. THE CONFLICT OF INTEREST

Mr. Plewniak was represented by Herbert L. Greenman in his criminal proceedings. Prior to the trial, Mr. Greenman joined the law firm Lipsitz, Green, Fahringer, Roll, Schuler and James as a partner. Another partner at this law firm, Paul Cambria, represented Henry Lentz and Lentz Milling Company, the purchaser of Mr. Plewniak's illegally diverted sugar. Mr. Lentz had testified under a grant of immunity at the grand jury investigation and was scheduled as a witness for the prosecution at Mr. Plewniak's trial. Shortly before the trial, the prosecutor brought to the attention of the district judge the potential conflict of interest created by the law firm's representation of both Mr. Plewniak and Mr. Lentz. The judge held a hearing on the morning of trial to discuss the matter with Mr. Plewniak and Mr. Lentz. At that hearing, Mr. Plewniak expressed his desire to waive all objections to the conflict and to continue to have Mr. Greenman represent him in spite of the conflict.

Mr. Lentz was called as a witness at the trial. On direct examination by the prosecutor, he testified that he bought sugar at a substantial discount from Mr. Plewniak, but he claimed that he did not know that the sugar was illegally diverted export sugar. On cross examination, Mr. Greenman did not attack Mr. Lentz's credibility regarding his knowledge or involvement in the illegal transactions. Mr. Greenman's questions emphasized that Mr. Lentz believed that the transactions were proper, and that this belief was reasonable. Mr. Lentz's testimony bolstered the defense theory that Mr. Plewniak was unaware of any illegality in the transactions.

In his § 2255 motion to vacate his sentence, Mr. Plewniak claimed that he was denied effective assistance of counsel because his law firm's concurrent representation of Mr. Lentz created a conflict of interest. To invalidate his waiver of that conflict of interest, Mr. Plewniak made two arguments: first, that his waiver was not voluntary and intelligent; and second, that even if the waiver was voluntary and intelligent, the trial court erred by accepting his

waiver because the conflict was unwaivable.

### *Requirements for a Voluntary and Intelligent Waiver*

 A criminal defendant may waive his right to conflict-free defense counsel if his waiver is voluntary and intelligent. *United States v. Garcia,* 517 F.2d 272, 277 (5th Cir.1975).[1] In *Garcia,* the Fifth Circuit advised the district courts to conduct a hearing, now known as a *Garcia* hearing, to inquire into the voluntariness of a defendant's waiver. The court's role at the hearing is to ensure that the defendant (1) is aware of the conflict of interest, (2) knows the potential consequences of continued representation under such a conflict, and (3) understands that he has a right to counsel unfettered by the conflict of interest. *United States v. Casiano,* 929 F.2d 1046, 1052 (5th Cir.1991) (quoting *Zuck v. Alabama,* 588 F.2d 436, 440 (5th Cir.1979)).

 Mr. Plewniak's claim goes to the second of these three requirements. Mr. Plewniak claims that his waiver was not voluntary and intelligent because the trial court failed to investigate the potential effects of the conflict and explain them to Mr. Plewniak at the *Garcia* hearing. Mr. Plewniak claims that his misunderstanding was further compounded by Mr. Greenman's misrepresentations to him about Mr. Lentz's role in the prosecution's case. Reviewing Mr. Plewniak's § 2255 motion, the district court rejected this claim, finding Mr. Plewniak's waiver voluntary and intelligent based on Mr. Plewniak's background as an attorney in addition to admonishments made by the trial court at the *Garcia* hearing. We review the district court's finding under a clearly erroneous standard. *United States v. Howton,* 688 F.2d 272, 276 (5th Cir.1982).

At the *Garcia* hearing held on the morning of trial, the following exchange occurred:

THE COURT: ... Mr. Plewniak, you should know, and Mr. Lentz, you should know that it is always possible in any criminal trial that some conflict could arise between you, Mr. Plewniak, as a defendant, and Mr. Lentz as a witness. Neither the government prosecutor nor the Court knows what involvement, in great detail, and can't know what possible involvement you, Mr. Lentz, might have with Mr. Plewniak, or vice versa. That potential causes the potential of conflict where, in effect, you're represented by the lawyers in the same law firm.

[The Court questioned Mr. Lentz, who expressed a desire to continue to be represented by Paul Cambria.]

THE COURT: Mr. Plewniak, you heard all that has been going on?

MR. PLEWNIAK: Yes, I did, Your Honor.

THE COURT: Notwithstanding that potential conflict, do you wish to be continued to be represented by the same firm that's going to be representing Mr. Lentz as a witness? Is that correct?

MR. PLEWNIAK: Yes.

THE COURT: And you waive any rights which might arise from you, or any objection you may have to that continued dual representation, is that correct?

MR. PLEWNIAK: Yes, I do.

. . . . .

MR. CAMBRIA: Your Honor, may I make an inquiry? I'm Paul Cambria representing Mr. Lentz. This didn't start out that way. Mr. Greenman just joined our firm a short time ago. The government has not pointed out anything to me at this point which I have been able to inform my client would pose a conflict situation. Mr. Lentz testified with immunity before the grand jury quite a while ago.

THE COURT: Counsel, let me stop you. At a conference that you didn't

---

**1.** As *Garcia* makes clear, the finding of a waiver obviates a determination of whether there was an actual conflict. *See Garcia,* 517 F.2d at 276. The district court was therefore correct in its decision not to address whether an actual conflict exists; Mr. Plewniak's argument to the contrary is rejected.

attend, the government advised the Court that it knew of no such conflict at the pre-trial. On the other hand, the government properly called to my attention that dual representation because it is unusual, and because you know more, and so does your client, about him, than the government possibly can, which I said earlier. That's why the government pointed it out, and that's why I wanted the waiver on the record in the event that it does arise. And, again, nobody else—I mean, the government does not know, and I don't know. If it does come up, the waiver is going to be affected, and if Mr. Lentz is concerned about that, he ought to get another lawyer. If Mr. Plewniak is concerned about that, I would order Mr. Lentz to get another lawyer.

Admittedly, the court failed to investigate the potential effects of the conflict. In fact, the court disclaimed any knowledge of the facts upon which the conflict might be based. The question presented here is whether the court's failure to investigate the conflict of interest renders Mr. Plewniak's waiver unintelligent or involuntary.

*Garcia* states that whether a defendant has properly waived a conflict of interest depends on the particular facts of the case, including the background, experience, and conduct of the accused. *Garcia*, 517 F.2d 272, 277 n. 5 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The district court, in its review of Mr. Plewniak's § 2255 motion, properly considered Mr. Plewniak's background as an attorney, as well as his personal knowledge of the facts creating the conflict, *i.e.*, whether and to what extent Mr. Lentz was involved in the conspiracy, in finding that the trial court sufficiently admonished Mr. Plewniak at the *Garcia* hearing. Although the application of *Garcia* may demand a more active investigatory role by the court under other circumstances, *see United States v. White*, 706 F.2d 506 (5th Cir.1983), we find that, given Mr. Plewniak's knowledge and background, the trial court fulfilled the requirements of *Garcia* in the present case. The district court's ruling to that effect in its disposition of Mr. Plewniak's § 2255 motion is not clearly erroneous.

■ Additionally, we find no merit in Mr. Plewniak's contention that he was misled by Mr. Greenman's description of Mr. Lentz's probable testimony. In the affidavit attached to Mr. Plewniak's § 2255 motion, Mr. Plewniak states that Mr. Greenman said to him "Don't worry! Henry [Lentz] won't hurt you." Mr. Plewniak further states that "[Mr. Greenman] did not advise me that Lentz was a material witness against me." Based on the substance of Mr. Lentz's testimony recounted above, we find that Mr. Greenman's statements about Mr. Lentz were not far off the mark. Mr. Lentz's testimony definitely exculpated himself; however, his testimony did not in itself incriminate Mr. Plewniak. Other witnesses testified to Mr. Plewniak's involvement in the forgery of the ocean bills of lading and the shipment of the illegally diverted sugar. In contrast, Mr. Lentz's testimony merely identified Mr. Plewniak as the seller of sugar to Lentz Milling Co. at a discounted price. Furthermore, impeaching Mr. Lentz's testimony in the manner now suggested by Mr. Plewniak, by proving that Mr. Lentz was involved in the illegality, would have been detrimental to Mr. Plewniak's defensive theory. Because we find that Mr. Greenman's alleged statements were not misleading, we dismiss Mr. Plewniak's claim that his waiver was involuntary because it was influenced by those statements.

### Unwaivable Conflicts of Interest

■ In the alternative, Mr. Plewniak argues that the trial court erred by accepting his waiver because the conflict of interest was unwaivable. In support of this argument, Mr. Plewniak cites the Supreme Court's decision in *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). We reject this argument because we do not believe that *Wheat* can be read to support Mr. Plewniak's position.

■ In *Wheat*, the Supreme Court affirmed a district court's refusal to accept a defendant's waiver of a conflict of interest.

The Court stated that the district court must recognize a presumption in favor of allowing the defendant to waive the conflict and keep his counsel of choice, but that the district court may, in its discretion, refuse to accept a waiver if necessary to ensure that the defendant receives a fair trial. *Wheat* cannot be construed as defining certain conflicts of interest as unwaivable; rather, it stands for the proposition that the decision to accept or reject a waiver rests within the sound discretion of the trial court. We find that the trial court in the present case acted within its discretion in accepting Mr. Plewniak's waiver.

## III. FAILURE TO COMMUNICATE AN OFFER OF LENIENCY

Mr. Plewniak also claims that he was denied effective assistance of counsel based on his counsel's failure to communicate an offer of leniency in exchange for cooperation. As evidence of this claim, Mr. Plewniak attached to his § 2255 motion a copy of a letter sent to Mr. Greenman by the U.S. Attorney's office, the contents of which Mr. Plewniak claims Mr. Greenman never communicated to him. The letter states:

> Enclosed is the Arago Indictment. The same type of Indictment will be returned against your client unless I hear to the contrary from you. Please inform Mr. Plewniak that time is running out.

The district court found that the letter was not an offer of immunity, so Mr. Greenman's failure to communicate the contents of the letter did not constitute ineffective assistance of counsel. In this appeal, Mr. Plewniak characterizes the letter as an offer of leniency rather than an offer of immunity, and he reasserts his claim that Mr. Greenman's failure to communicate that offer denied him effective assistance of counsel.

We need not decide whether the failure to communicate an offer of leniency constitutes ineffective assistance of counsel because no such offer was made here. The prosecutor's letter was not specific enough to be characterized as an "offer" at all; it was a threat of the consequences of the defendant's failure to cooperate. At best, it was an indication of the government's willingness to negotiate. Mr. Plewniak cannot claim that he was prejudiced by a lack of awareness of this general state of affairs. His affidavit shows that in January of 1986 Mr. Greenman communicated to him a specific offer from the prosecution to plead to a misdemeanor. The district court correctly found that Mr. Greenman's failure to communicate the contents of the above-quoted letter did not constitute ineffective assistance of counsel.

## IV. RESTITUTION

Mr. Plewniak claims that the trial court's imposition of $1.4 million in restitution was improper because the court did not consider the factors set out in 18 U.S.C. § 3664(a). Section 3664(a) provides that the court "shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a). The court is not required to make specific findings on these factors, and an appellate court need only satisfy itself that the record adequately supports the district court's order. *United States v. Patterson*, 837 F.2d 182 (5th Cir.1988).

At sentencing, the court ordered Mr. Plewniak to "make restitution of the unlawful gain which you have got from these transactions in the amount of 1.4 million dollars." The victim impact statement contained within the presentence investigation report (PSI) states that the U.S. Customs Service lost revenue in the amount of $1,570,110 and that the various refiners from whom Mr. Plewniak bought sugar have been subjected to penalties totalling $6,909,882. Estimates of the total amount of damages caused by the sugar diversion exceed $20 million. In addition, a list of Mr. Plewniak's assets and liabilities is attached to the PSI, showing Mr. Plewniak's net worth to be in excess of $500,000. Based on this data, the probation officer recommended restitution in the amount of

$1.4 million. When asked about the PSI at the sentencing hearing, Mr. Plewniak's attorney said, "[W]e found the presentence report to be a very detailed, accurate fine job by the Probation Office. We have no issue with it."

Additionally, the government's sentencing memorandum contains a breakdown of the profits made by the various entities through which Mr. Plewniak conducted his business. This exhibit details the transactions, showing a total profit of $1,411,711. The record reflects no objection by Mr. Plewniak to the accuracy of these figures.

The record adequately supports the district court's imposition of $1.4 million in restitution based on the statutory factors enumerated in 18 U.S.C. § 3664. Based on the information contained in the record, we find that the district court's imposition of restitution on the defendant in the amount of $1.4 million was not an abuse of discretion.

## V. EVIDENTIARY HEARING ON § 2255 MOTION

Mr. Plewniak requested an evidentiary hearing on his § 2255 motion to present facts that would support the foregoing claims. Section 2255 provides that a hearing is required "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (1971). The district court found that the record in this case clearly established that Mr. Plewniak was not entitled to relief and that an evidentiary hearing was therefore unnecessary. Based on an independent review of the motion and the record, we agree that an evidentiary hearing was not required, and that the district court's refusal to hold a hearing on Mr. Plewniak's § 2255 motion was not error.

For the foregoing reasons, the district court's denial of Mr. Plewniak's motion for post-conviction relief is hereby AFFIRMED in all respects.