**UNITED STATES of America**

v.

**NYNEX CORPORATION.**

**Crim. No. 90–0238 (HHG).**

United States District Court, District of Columbia.

March 20, 1992.

Michael P. Harmonis, Carl Willner, Kenneth W. Gaul, Katherine E. Brown, Antitrust Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Scott W. Muller, Linda Chatman Thomsen, J. Andrew Heaton, Davis Polk & Wardwell, Washington, D.C., Guy Miller Struve, Seth Richard Lesser, Davis Polk & Wardwell, New York City, for Nynex Corp.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Defendant NYNEX has filed several motions, in addition to the many previously filed and disposed of by the Court.[1] There is also one new motion by the government. None of the recent motions has substantial merit, and all of them must be denied.

### I

### *Defective Indictment*

█ NYNEX requests that the indictment be dismissed for failure to charge that that corporation committed the offense. This request is based upon the claim that, even though NYNEX is identified in the indictment as the defendant—indeed the sole defendant—the actual perpetrator of the allegedly unlawful acts is its subsidiary Telco Research. The request is not well taken.

The indictment, as noted, specifies that NYNEX committed the allegedly unlawful acts in that it "did willfully disobey this Court's lawful and specific Order by providing information services." Indictment ¶ 8. Further, in a separate allegation, the indictment charges that "NYNEX" engaged in the prohibited activities "through Telco Research." Indictment ¶ 9. These allegations alone are adequate to charge that that corporation committed the offense.

█ At most, NYNEX's papers could be read to claim that NYNEX did not commit or could not have committed the prohibited

---

1. On December 13, 1991, 781 F.Supp. 19 (D.D.C.), this Court ruled on six motions by the defendant: (1) motion for a bill of particulars; (2) motion to dismiss the indictment based on the government's failure to present exculpatory evidence to the grand jury; (3) motion for production of various materials; (4) motion for a jury trial (together with a simultaneous motion by the government for a bench trial); (5) motion to dismiss the indictment because the Antitrust Division had a disabling conflict; and (6) motion for identification of certain information under Fed.R.Crim.P. 16(a)(1)(C) and Fed. R.Evid. 404(b).

The motions, oppositions, and replies totaled 330 pages, exclusive of the voluminous exhibits and appendices.

acts because Telco Research was alien to it. However, that would be a matter to be addressed during or at the conclusion of the trial, in the context of a motion for an acquittal; it does not go to the viability of the indictment. As the government correctly notes, there is no requirement that the indictment specify in detail how the prosecution expects to go about proving the charges. *See, e.g., United States v. Edmond*, 924 F.2d 261, 269 (D.C.Cir.1991); *United States v. Shorter*, 608 F.Supp. 871, 874 n. 2 (D.D.C.1985), *aff'd*, 809 F.2d 54 (D.C.Cir.1987).

There are also several more detailed theories which the government advances, and which at least at this juncture are entirely sufficient to support the indictment herein against the NYNEX motion.

 First, NYNEX may be held criminally liable under several clauses of the decree for the conduct of its wholly-owned subsidiaries. Thus, the information services restriction in section II(D) of the decree applies to any Regional Company,[2] such as NYNEX, acting "directly or through any affiliated enterprise." Similarly, section IV(C) of the decree defines Regional Company *inter alia* as any "entity directly owned or controlled by a [Regional Company] or affiliated through substantial common ownership." And NYNEX has a duty under section III of the decree to ensure that all its subsidiaries and their employees carry out the terms of the decree. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771–72, 104 S.Ct. 2731, 2741–42, 81 L.Ed.2d 628 (1984); *United States v. Western Electric Co.*, 797 F.2d 1082, 1088 (D.C.Cir.1986).[3]

 Second, the courts will disregard the corporate form where the notion of legal entity is used to protect fraud or crime. *See, e.g., Anderson v. Abbott*, 321

U.S. 349, 363, 64 S.Ct. 531, 538, 88 L.Ed. 793 (1944); *United States v. Milwaukee Refrigerator Transit Co.*, 142 F. 247, 255 (E.D.Wis.1905). This doctrine may be particularly apt in the present factual situation, if it is true that, as the government claims, NYNEX transferred its Telco Research subsidiary to a group of its managers following the return of the indictment in this case in order to frustrate that indictment.

The motion will be denied.

## II

### Amendment of Indictment

NYNEX has moved to prohibit the government from amending the indictment. The motion will be denied.

 In the first place, what NYNEX is really requesting is relief from an anticipated effort by the prosecution to adduce certain evidence at the trial. That type of relief is not properly sought with reference to the indictment but rather by an objection at the trial itself to the use of certain testimony or other evidence as it is being proffered by the prosecution. That is not a mere technicality because it is far more difficult for a court to determine the admissibility of evidence in the abstract, as it were, rather than in the context of other evidence as well as opening statements and the like. The motion is subject to denial on that basis.

Courts may, and sometimes do, consider what would be trial issues as part of pretrial motions in limine. The Court has considered defendant's substantive claims on that basis and, in order to assist the parties with their planning, it is herein providing to them its tentative views which are, of

---

**2.** The decree specifically refers to Bell Operating Companies, or BOCs, but the functions and obligations of these entities have been assumed by the Regional Companies.

**3.** A corporation can of course be held criminally liable for the acts of its agents. *United States v. A & P Trucking Co.*, 358 U.S. 121, 125, 79 S.Ct. 203, 206, 3 L.Ed.2d 165 (1958); *Developments—*

*Corporate Crime*, 92 Harv.L.Rev. 1227, 1247 n. 20 (1979). Likewise, an alter ego analysis may be used to impose liability on a parent corporation for the conduct of its subsidiary. *See National Dairy Products Corp. v. United States*, 350 F.2d 321, 325–27 (8th Cir.1965), *vacated on other grounds*, 384 U.S. 883, 86 S.Ct. 1913, 16 L.Ed.2d 995 (1966).

course, subject to further consideration if raised again in the course of the trial.[4]

Although both parties have filed voluminous briefs,[5] two principal issues have emerged from the papers.

■ First. NYNEX argues that incidents of on-line telephone access to Telco Research that arose in connection with studies that MCI did for Rockwell International and others were not pursuant to any of the three contracts referred to in the indictment and hence are not part of the offense charged therein. *See Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). In this regard NYNEX relies upon language in paragraph nine of the indictment which charges, in the singular, that NYNEX provided an illegal "service" to MCI pursuant to the several agreements.[6]

The government points out, correctly in the Court's present view, that the singular terminology in paragraph nine should be read in conjunction with paragraph eight, the only other paragraph under the "Offense Charged" section of the indictment, which alleges that NYNEX disobeyed the Court's order by providing information "services" as described below. These allegations fairly inform the defendant of the charge against which it must defend and enable it to plead former jeopardy if that should become necessary. *United States v. Shorter, supra,* 608 F.Supp. at 874 n. 2; *United States v. Poindexter,* 725 F.Supp. 13, 20–21 (D.D.C.1989), *rev'd on other grounds,* 951 F.2d 369 (D.C.Cir.1991).

■ Second. NYNEX further argues that any claim in or under the indictment that access to computers other than that in connection with the Rockwell study renders the indictment fatally duplicitous. On this issue, both parties cite this Court's opinion in *United States v. Shorter, supra.* The

government's reading of that opinion and of the law on duplicity is far more persuasive. It is hornbook law that it is valid to charge in one count the commission of an offense by different means. Rule 7(c), Fed.R.Crim.P.; *Shorter,* 608 F.Supp. at 876. Indeed, the NYNEX analysis neglects the hundreds if not thousands of criminal cases of all sorts in the federal courts in which a single count has properly charged either a continuous course of conduct or discrete acts of misconduct. *See, e.g., United States v. Holmes,* 822 F.2d 481, 488–89 (5th Cir.1987) (criminal contempt); *United States v. Twentieth Century-Fox,* 700 F.Supp. 1246, 1249–50 (S.D.N.Y.1988), *aff'd in relevant part,* 882 F.2d 656 (2d Cir.1989) (criminal contempt); *Poindexter,* 725 F.Supp. at 24.

The motion will be denied, such denial to be without prejudice on the issue discussed under "First," *supra.*

### III

### *"Bad Acts" Evidence*

NYNEX has moved for an order prohibiting the government from introducing evidence regarding certain NYNEX conduct as "bad acts" pursuant to Fed.R.Evid. 404(b).

The government filed a notice of its intention to introduce evidence regarding Telco Research's Tariff Library pursuant to Rule 404(b). NYNEX objects on a variety of grounds.

First, NYNEX contends that inasmuch as the conduct involved was that of Telco Research, it cannot be imputed to or used against NYNEX. The Court has rejected this argument under Part I, *supra,* and the reasoning there employed applies here as

---

4. Since there will not be a jury, it will not be cumbersome to engage in such further consideration.

5. The briefs on this motion as well as others would appear to be inappropriately prolix for relatively simple legal and factual propositions in the context of a one-count criminal indictment.

6. In its initial motion papers but not in its reply, NYNEX also relies on other incidents similar to the Rockwell transaction. The Court's reasoning and hence its conclusion would be the same with respect to these transactions.

well.[7]

■ Second, it is argued that the Telco Research Tariff Library incident does not show any willful intent to violate the decree in the *AT & T* case but an intention *not* to violate that decree. Indeed, it is NYNEX's assertion that it recognized before acquiring the Tariff Library service that post-acquisition provision of the service would violate the decree; it instructed the Tariff Department to cease selling the service; and when it was subsequently discovered that computer access codes permitted old customers to dial into the service, the codes were immediately disabled.

Even if all of that is correct, it does not call for denial of the admissibility of the proffered evidence. The government is seeking to introduce evidence concerning the Tariff Library service in part to demonstrate that NYNEX's actions with respect to the alleged contempt here were willful, in that NYNEX knew or should have known that its conduct would violate the decree, and that it nevertheless committed the allegedly contumacious acts deliberately or recklessly. *Sykes v. United States,* 444 F.2d 928, 930 (D.C.Cir.1971); *see also, United States v. Seale,* 461 F.2d 345, 368 (7th Cir.1972). Says the government: NYNEX's understanding of its obligations under the decree with respect to the Tariff Library is evidence that it knew of its obligations with respect to the MCI service bureau obligations under the same decree. *See United States v. Miller,* 895 F.2d 1431, 1436 (D.C.Cir.1990) ("[U]nder Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose as long as the evidence is not offered *solely* to prove character.")

To be sure, not every act can be so employed in this manner. However, NYNEX acknowledges that the Tariff Library incident is at a minimum "somewhat similar" to the incident which is the subject of the contempt request, Memorandum in Support of Motion at 12, and that is sufficient to overcome the threshold problem of admissibility. Nevertheless, proof of the Tariff Library matters would not, in any event, be conclusive of the willfulness issue; but it would be some evidence on that question.

Third, NYNEX relies upon Fed.R.Evid. 403 for the proposition that, even if all of this is true and the evidence is relevant, it may still be excluded for other reasons. While several other bases cited in Rule 403 have some applicability here,[8] the one that is most troublesome to the government's proffer is danger of unfair prejudice to the defendant.[9]

It does not appear at the present time that the probative value of the Tariff Library evidence would be outweighed by the danger of unfair prejudice. But a final judgment on that issue can be made only in the context of the overall evidence. Thus, denial of this motion will be without prejudice to NYNEX's renewal of its objection at the trial.

## IV

### Failure to Charge Illegal Act

This motion is another example of an effort to convert an objection to trial evidence or its adequacy into an attack on the indictment itself.[10]

NYNEX argues that the conduct alleged in the indictment was not prohibited by the

---

7. NYNEX also relies upon *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988), but that reliance is misplaced. In that case the issue was not whether "bad acts" of one may be imputed to another, let alone whether a subsidiary's acts may be imputed to a parent; all the acts in that case were committed by the same defendant.

8. For example, the issues of undue delay and waste of time are also present, but they can be dealt with in practical terms by the Court, sitting without a jury.

9. The Court notes that the government quotes the Rule as providing that relevant evidence may be excluded if its probative value is "substantially outweighed by ... considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Memorandum in Opposition at 10. That recitation omits the factor that is most significant in the present context—the danger of unfair prejudice.

10. Indeed, NYNEX argues that the government's position on this motion "suffers from the same basic fallacy as its position" on the motion discussed in Part I, *supra.* Reply Memorandum at

AT & T decree but was permitted thereby, and further that, in any event, the decree does not prohibit that conduct with sufficient clarity. Despite the energetic effort of NYNEX to couch those arguments in terms of legal principles, what is involved are issues of fact and of evidence that are to be resolved after the trial, not prior thereto.

What NYNEX is really arguing is that the indictment is invalid because it does not negate the corporation's defenses, most particularly that it does not negate the possibility that what was done here was the allowable provision of customer premises equipment (CPE) and computer software. But it is obvious that these are defense matters, for on its face the indictment tracks the language of the decree, in particular the line of business restrictions in section II(D)(1) and the definition of "information services" in section IV(J). NYNEX's effort to have the Court read the decree "as a whole" (Memorandum in Support of Motion at 3), and to do so on the basis of NYNEX's own assumed facts,[11] is unavailing at this juncture.

■ NYNEX's pretrial attack on the clarity of the order it is charged with violating fails for similar reasons. The "clear and specific order" element in criminal contempt is a question of fact, depending in part on the context in which the order is entered and the audience to which it is addressed. *Matter of Betts*, 927 F.2d 983, 986 (7th Cir.1991); *United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir.1989); *United States v. Greyhound Co.*, 508 F.2d 529, 532 (7th Cir.1974).[12]

The Court may be called upon at some subsequent time in this case to revisit the "specific order" issue; suffice it to say at this pretrial stage that for present purposes section II(D)(1) of the decree prohibits the provision of information services with sufficient definiteness, and section IV(J) defines "information services" with equal clarity.

The motion will be denied.

## V

### Conflicts of Interest

■ The government has filed a motion requesting the Court to hold a pre-trial hearing "or other appropriate proceedings" to inquire into actual or potential conflicts of interest resulting from the representation by the firm of Davis Polk & Wardwell, counsel for NYNEX, of individuals likely to be called as witnesses for the prosecution.

It appears that Davis Polk represents present and former employees of NYNEX in addition to the corporation itself. The government has notified the Court that it intends to call at least two employees of Telco Research to testify for the prosecution at trial, and that both of these employees were represented by Davis Polk at the time of their grand jury appearances. Accordingly, argues the government, there may well be an impermissible conflict, and steps by the Court are necessary to protect the various interests. This is so, according to the government, because Davis Polk will be confronted with an ethical dilemma: it may either misuse the confidential information it gained during its representation of the employees to the advantage of NYNEX or it may fail to cross-examine the individuals involved fully and effectively.

The government goes on to suggest that, to "protect the rights of the defendant and the individual witnesses," the Court should obtain additional information, and determine "whether the individual prospective

---

5. The Court has rejected the argument with regard to that motion, and, as will be apparent, it also rejects the argument here.

11. For example, NYNEX disputes that the MCI service bureau was an information service, contending that it involved only a lease of a dedicated computer and the provision of computer software. The difference between the two may be significant; and it may turn on many factors, all of which depend on evidence, not a simple construction of the indictment.

12. NYNEX relies to the contrary upon *United States v. Critzer*, 498 F.2d 1160 (4th Cir.1974), but that decision turned on questions of vagueness, stemming from the uncertainty of the legal standard of taxability and the confusion created by different views expressed by various agencies of government. *Critzer* was not a pretrial case, but the court found that a judgment of conviction could not stand on account of the vagueness-intent problem.

**22**

witnesses have communicated attorney-client confidences to Davis Polk ... and whether they are willing to make an informed waiver of their attorney-client privilege for these confidences." Memorandum of the United States in Support of the Motion at 12.

In response, NYNEX has submitted *inter alia* (1) affidavits from the two individuals identified by the government as potential witnesses, stating that these persons have no objection to having Davis Polk question them at trial as to anything they told lawyers from that firm at the time they were represented by them; (2) an affidavit of the executive vice president and general counsel of NYNEX waiving that company's right to a claim of ineffective assistance of counsel in the event that Davis Polk's prior representation of the two individuals or any other person impedes its ability effectively to defend NYNEX; and (3) an affidavit of the Davis Polk partner handling the instant litigation averring that the law firm believes that there exist no conflicts of interest or ethical obligations that would prevent it from questioning the individuals at trial.

The Court concludes that these representations and the other legal and factual submissions of NYNEX lay to rest any conflict of interest and ethical problems. *See, e.g., Takacs v. Engle,* 768 F.2d 122, 125 (6th Cir.1985).

To be sure, the government advances various scenarios in its reply papers, which, it is suggested, could conceivably give rise to conflict problems. However, not only are these predictions of future events extremely conjectural,[13] but they also neglect the overriding interest of the defendant herein and its right under the Sixth Amendment to representation by counsel of its own choice. To deprive NYNEX of that representation on the thin basis here being proffered would be entirely inappropriate. The Supreme Court has stated that there is a presumption in favor of a defendant's choice of counsel. *Wheat v. United States,* 486 U.S. 153, 158–63, 108 S.Ct. 1692, 1696–

99, 100 L.Ed.2d 140 (1988). Davis Polk is the counsel NYNEX chose for this matter, not just yesterday, but over four years ago, and the NYNEX Memorandum in Opposition to the government's motion states persuasively that "it is inconceivable at this late date that NYNEX could obtain and have the effective assistance of new counsel...." Memorandum at 10. The Court also agrees with defendant's concluding observation:

... What were contrived as protections for the accused should not be turned into fetters....

... When the administration of the criminal law ... is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards ... is to imprison a man in his privileges and call it the Constitution.

*Adams v. United States,* 317 U.S. 269, 279–80, 63 S.Ct. 236, 241–42, 87 L.Ed. 268 (1942) (Frankfurter, J.), *quoted in Faretta v. California,* 422 U.S. 806, 815, 95 S.Ct. 2525, 2531, 45 L.Ed.2d 562 (1975).

The government's motion will be denied.

---

**13.** If notwithstanding the tenuousness of the government's predictions, conflict problems should arise, the Court, sitting without a jury,

could resolve them without danger to the rights of anyone.