UNITED STATES of America,

v.

**Albert J. PIRRO, Jr. and Anthony G. Pirro, Defendants.**

**No. S2 99 CR. 182(BDF).**

United States District Court,
S.D. New York.

Dec. 9, 1999.

Mary Jo White, U.S. Atty. by Elliott Jacobson, Cathy Seibel, Justin Weddle, Washington, DC, for U.S.

Robert J. Giuffra, Jr., Sullivan & Cromwell, New York City, Anthony J. Servino, Bank, Sheer, Servino & Seymour, White Plains, NY, Gustave H. Newman, Ann Marie Hassett, Newman, Schwartz & Greenberg, New York City, Michael G. Santangelo, White Plains, NY, for Albert Pirro.

Roger Stavis, Stavis & Kornfeld, New York City, for Anthony G. Pirro.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Defendant Albert J. Pirro, Jr., moving pursuant to Fed. R. Crim P. Rule 12(b), challenges the legal sufficiency of the allegations in subpart (2) of paragraph 56 in Count 67 of the Indictment. Relief is sought on the ground that the subject matter of that subpart—namely the pursuit of a real-estate venture by Albert Pirro and Robert Boyle, former Chairman of the Hudson Valley Hospital Center ("HVHC"), which allegedly resulted in the filing of a fraudulent tax return by a corporation of which Pirro was a controlling shareholder and in which Boyle was alleged to be a *de facto* shareholder—fails to articulate the violation of a known legal duty. *See United States v. Bok*, 156 F.3d 157, 165 (2d Cir.1998).

Paragraph 56 alleges that Albert Pirro filed a false 1992 U.S. Income Tax Return for an S Corporation, Distinctive Properties of Croton, Inc. ("DPC"), because he: (1) "disguised personal expenses as business expenses that would not appear as income to ALBERT J. PIRRO, JR. thereon, and deducted as rental real estate expenses thereon, expenses which ... were not legitimate rental real estate expenses"; and (2) "failed to report thereon the hospital Chairman's ownership interest in DPC, misstated thereon ALBERT J. PIRRO, JR.'s ownership interest in DPC, and failed to reflect thereon all of the payments DPC had made ... to the hospital Chairman's wholly owned company," in violation of 26 U.S.C. § 7206(1). (Indictment ¶ 56). For the reasons set forth below, the defendant's motion is granted in part.

## *BACKGROUND*

Count 67 alleges that DPC is an S corporation which, from 1991 to 1993, devel-

oped commercial property in Croton, New York for use as a professional office building (the "Croton building"). On April 19, 1991, DPC allegedly acquired the Croton building for $950,000. DPC then leased the building to Hudson Valley Ventures, Inc. ("HVV"), a subsidiary set up by the hospital's corporate parent, from February 1991 to July 1993. During the period of the leasehold, DPC renovated the building with monies from the hospital (or its corporate parent) and converted it into a professional office building to be leased to doctors affiliated with the hospital. On July 12, 1993, DPC sold the building to HVV for $1.5 million.

Count 67 further alleges that Pirro, through a corporation he controlled, made a series of payments to a corporation wholly owned by Boyle and thereby assisted Boyle in concealing his "ownership interest" in DPC in violation of Boyle's fiduciary duties. The Indictment alleges that as money came in to DPC from HVV, Pirro's bookkeeper would write checks from DPC to a company wholly owned and controlled by Pirro called PM Messenger, Inc. ("PMM"). As each of these checks were written, on either the same day or the following day, the bookkeeper would then write a check in the same amount on the account of PMM to Rogene Industries, Inc., a company wholly owned and controlled by Boyle.[1] The total amount of these checks was $135,726.70. In addition, following the sale of the Croton building to HVV, the Indictment alleges that AJP Management Group, Inc., a company owned by Pirro, paid $156,572.57 to Boyle's company. The Government proffers that during the period of the leasehold between DPC and HVV, "almost exactly 45% of the cash flow coming in from HVV was divided up on a 45%–45%–10% basis

among Robert Boyle, Albert Pirro, and Paul Monsell."

The Indictment accuses Pirro of filing a false Schedule K–1 included in DPC's 1992 income tax return in which Pirro listed himself as a 90% shareholder of DPC and Paul Monsell, then his law partner, as a 10% shareholder, when, in fact, Boyle owned 45% of DPC's stock. The Government essentially alleges that these transactions, which made Boyle a "de facto" owner of DPC shares, gave rise to a duty accurately to report this interest on the 1992 DPC return, the violation of which is charged in subpart (2).

Pirro, in contrast, asserts that Boyle never became a shareholder of DPC because in February 1991 Pirro and Monsell entered into an agreement under which Pirro would acquire 45 of the 50 shares of DPC and Monsell would acquire the other 5 shares. Then on April 3, 1991, DPC granted an option to Westchester Concrete, Inc., a company wholly owned by Boyle, to acquire 45% of the shares of DPC. By its terms, Boyle had to exercise the option within 30 days of DPC's acquisition of the Croton Building. Pirro asserts that Boyle never exercised the option, which expired on May 19, 1991. Therefore, Pirro contends, under relevant tax code sections and IRS regulations, Boyle never became a "shareholder" of DPC for purposes of subchapter S, and consequently never incurred, for tax reporting purposes, the obligations imposed by the Code and the Regulations on shareholders in S corporations. See Code §§ 1361–1379.

In response to the Indictment, both former and present defense counsel made formal requests to the Government to particularize the nature of Boyle's "ownership interest" in DPC alleged in Count 67.[2] In

---

1. The Government alleges that PMM was a dummy corporation whose sole purpose was to generate illegal tax deductions for Pirro and to launder payments to Boyle.

2. Requests were made by Pirro's former counsel Robert J. Anello, by letter dated March 23, 1999, addressed to Assistant Unit-

ed States Attorney Elliott B. Jacobson, and by present counsel by letter dated July 8, 1999. In the July 8 letter, defense counsel demanded that the Government:

26. **Paragraph 48:** Identify the nature of the "ownership interest" allegedly acquired by the hospital Chairman in Distinctive Prop-

its Bill of Particulars, the Government briefly reiterated the allegations in the Indictment, specifically the failure to list Boyle on DPC's 1992 return, and stated that other information sought was "not properly the subject of a bill of particulars." Government's Letter to Gustave H. Newman Esq., July 26, 1999, at 3.[3] Dissatisfied with these responses, the defense again requested additional information by letter dated August 9, 1999. In response, the Government identified the line items alleged to be false on the 1992 DPC tax return.

Armed with this additional information, Pirro moves, on the ground of legally insufficiency, to strike the allegations in subpart (2) of paragraph 56 primarily because the Indictment's failure to allege that Boyle was a "shareholder" of DPC results in a failure to allege the violation of a "known legal duty." This Court agrees.

### DISCUSSION

█ As an initial matter, the Government argues that the defendant's motion to strike the Boyle Allegations is untimely, not having been made by the deadline set for pre-trial motions. Rule 12 of the Federal Rules of Criminal Procedure provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." Fed.R.Crim.P. 12(b). Defenses and objections based on the failure of an indictment "to charge an offense ... shall be noticed by the court at any time during the pendency of the proceedings." Fed.R.Crim.P. 12(b)(2). Our Circuit has held that "[i]n a criminal case, a failure of the indictment to charge an offense may be treated as a jurisdictional defect, ... even if the issue was raised neither in the district court nor on appeal." *United States v. Foley,* 73 F.3d 484, 488 (2d Cir.1996) (citations omitted). "Issues that go to whether the conduct alleged and proved is punishable under the statute charged are thus cognizable on appeal under the plain-error doctrine." *Id.; see also United States v. Miller,* 161 F.3d 977, 982 (6th Cir.1998) (same); *United States v. Meacham,* 626 F.2d 503, 509 (5th Cir. 1980)(same); *Government of Virgin Islands v. Greenidge,* 600 F.2d 437, 439 & n. 2 (3d Cir.1979) (same). These principles mean that Pirro's challenge to subpart (2) of paragraph 56 is properly before the Court.

█ In response, the Government contends that, in any event, "a Rule 12(b) motion to dismiss is not the proper way to raise a factual defense." 24 *Moore's Federal Practice* § 612.02, at 612–8 (3d ed.1997). The Court, the Government contends, must presume the truth of the allegations in the indictment, *United States v. Jensen,* 93 F.3d 667, 669 (9th Cir.1996); *United States v. Barker Steel Co.,* 985 F.2d 1123, 1125 (1st Cir.1993), and cannot resolve questions—such as those raised by the Boyle allegations—that require trying

erties of Croton, Inc. ("DPC"), including (a) the date such an interest was acquired, (b) any consideration paid by the hospital Chairman to acquire this interest, (c) any documents evidencing the hospital Chairman's ownership of such an interest, and (d) the statute, regulation or other authority supporting the allegation that the hospital Chairman acquired an "ownership interest" in DPC.

. . . . .

29. At page 3 of your letter of June 3, you state that "[t]he hospital Chairman's interest in Distinctive Properties of Croton ('DPC') should have been disclosed on a Schedule K–1 for the Hospital Chairman filed with the DPC corporate tax return."

In view of this response, identify (a) the page and line reference of a Schedule K–1 where such interest should have been so reflected; and (b) the statute, regulation or other tax authority requiring the disclosure of such alleged interest on a Schedule K–1.

3. The Government's response to defendant's request for particulars stated, in pertinent part:

**Response to Request 29:** With respect to part (a) of this request, a Schedule K–1 should have been filled out in its entirety for the hospital Chairman. Part (b) of this request seeks information that is not properly the subject of a bill of particulars.

facts reserved for the jury. *United States v. Knox,* 396 U.S. 77, 83–84 & n. 7, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); *United States v. Alfonso,* 143 F.3d 772, 776–77 (2d Cir. 1998) ("To the extent that the district court looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the Government at trial ... we hold that, in the circumstances presented, such an inquiry into the sufficiency of the evidence was premature."). Under Fed.R.Crim.P. 12(b), however, an indictment may be dismissed where there is "an infirmity of law" undergirding the Government's theory. *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir.1987).

■ While fact questions raised by an Indictment are the province of the jury, the existence of a known legal duty owed by a taxpayer is a question of law for the court. *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 97 (2d Cir.1983); *see also United States v. Mallas,* 762 F.2d 361, 364 n. 4 (4th Cir.1985) ("uncertainty of a tax law, like all questions of vagueness, is decided by the court as an issue of law."). The reason for this rule is that "it would be very confusing to a jury to have opposing opinions of law admitted into evidence as involving a factual question for them to decide." 698 F.2d at 97.

■ Allowing the Government's case to go forward on subpart (2) could produce this result. Pirro and the Government essentially argue over whether the law requires an individual who is not a shareholder of record but who, as a *"de facto"* shareholder or as holder of an "ownership interest" or who otherwise shares the profits of an S corporation, must be listed on its Schedule K–1. A review of the authority governing this issue strongly suggests that the law does not impose such a duty. At a minimum, the legal obligation to do so is sufficiently debatable so that the "duty" in question cannot be said to be "clear" and, thus, should not supply the predicate for criminal liability.

Section 7206(1) "requires that the Government prove that the defendant acted willfully. And the Supreme Court has made clear that in order to avoid snaring people in the tangled net of the tax code solely due to their incompetence, willfulness under the tax laws requires 'a voluntary, intentional violation of a known legal duty.'" *United States v. Bok,* 156 F.3d 157, 165 (2d Cir.1998) (quoting *Cheek v. United States,* 498 U.S. 192, 200–01, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991)); *see also Mallas,* 762 F.2d at 363 ("Willful conduct under § 7206, ... requires that the duty involved must be knowable.").

■ In a tax prosecution of this nature, any lack of clarity in the statutes, Code provisions or Regulations at issue should be construed in a defendant's favor. "If, as a matter of law, the applicability of the tax law [is] uncertain, the indictment should be dismissed." *United States v. Baer,* 662 F.Supp. 126, 129 (W.D.N.Y.1987) (citing *Ingredient Technology,* 698 F.2d at 97); *see also United States v. Harris,* 942 F.2d 1125, 1132 n. 6 (7th Cir.1991) ("A claim of objective ambiguity requires that the court examine all of the relevant precedents and dismiss the indictment if it concludes that the tax obligation is ambiguous as a matter of law."). The reason for this requirement is that a criminal prosecution in the area of corporate taxation for the violation of an unclear duty is inconsistent with the Government's obligation to warn citizens whether particular conduct is legal or illegal. *Mallas,* 762 F.2d at 363; *see also United States v. Dahlstrom,* 713 F.2d 1423, 1428 (9th Cir.1983) ("A criminal proceeding pursuant to section 7206 'is an inappropriate vehicle for pioneering interpretations of tax law.'") (citation omitted).

Subchapter S of the Internal Revenue Code §§ 26 U.S.C. 1361–1379, was enacted in 1958 to eliminate tax disadvantages that might dissuade small businesses from adopting appropriate corporate structures. *Bufferd v. Commissioner of Internal Revenue,* 506 U.S. 523, 524–25, 113 S.Ct. 927, 122 L.Ed.2d 306 (1993). The statute ac-

complishes these goals by means of pass-through provisions under which corporate income, losses, deductions, and credits are attributed to individual shareholders in a manner akin to the tax treatment of partnerships. *Id.* at 525, 113 S.Ct. 927; *see also* §§ 1366–1368. DPC elected to become an S corporation on January 16, 1991.

Under the Code, a corporation may elect to become an S corporation by filing a Form 2553 with the IRS, and the timing of this election is in the control of the shareholders of the corporation. *See* Code § 1362; Treas. Reg. § 1.1362–6(a). Code § 1362(a)(2) expressly provides: "All shareholders must consent to election.-An election under this subsection shall be valid only if all persons who are shareholders in such corporation on the day on which such election is made consent to such election."

The Indictment alleges that Albert Pirro granted a 45% "ownership interest" to Boyle in exchange for Boyle's services in connection with the finding, leasing and sale of the Croton Building at around the time that DPC acquired it. At about this time, Boyle received the option to acquire 45% of DPC. Nothing in the record reveals that he exercised this option.

The Government has cited no viable authority in support of its contention that Boyle's status as a "de facto" shareholder or his "ownership interest" in DPC required Pirro to include him in the DPC 1992 tax filing. The Code and Regulations carefully circumscribe the qualifications of shareholders of S corporations in a series of inter-related provisions that are somewhat complex. A careful perusal of these provisions would not compel the conclusion that "*de facto* shareholder" or "ownership interest" were congruent with "shareholder." For example, the Code provides:

> Every S corporation shall make a return for each taxable year, stating specifically ... the names and addresses of all persons owning stock in the corporation at any time during the taxable year, the number of shares of stock owned by each shareholder at all times during the taxable year, the amount of money and other property distributed by the corporation during the taxable year to each shareholder, the date of each such distribution, each shareholder's pro rata share of each item of the corporation for the taxable year, and such other information, for the purpose of carrying out the provisions of subchapter S of chapter 1, as the Secretary may by forms and regulations prescribe.

26 U.S.C. § 6037. As the defense points out, "shareholder" is the only ownership status referred to in this section. Similarly, the related IRS Regulation, "Return of electing small business corporation, only refers to "shareholders." " Treas. Reg. § 1.6037–1. In addition, the 1992 "General Instructions for Schedule K and K–1—Shareholders' Shares of Income, Credits, Deductions, etc.," state that "[s]hareholders are liable for income tax on their shares of the corporation's income ... and must include their share of the income on their tax return whether or not it is distributed to them," and provide that, "[a] copy of each shareholder's Schedule K–1 must be attached to the Form 1120S filed with the IRS." Instructions for Form 1120S at 14. The prosecution has not shown that Pirro was required to include Boyle's "ownership interest" on the Schedule K–1 because it has not shown that such an interest is required to be reported under the relevant provisions of subchapter S. *See* Code §§ 1361–1379 (governing S corporations).

Further, under Code § 1366(a)(1)(A), the shareholders of an S corporation must share in its profits and losses in proportion to their stock ownership, and a corporation's S status terminates if this does not occur. But the Indictment does not allege that Boyle received a percentage of the profits of all of DPC's transactions (as opposed to just from the Croton Building), or that Boyle was liable for his share of any DPC losses. It would be highly ano-

malous if the return of an S corporation could support a criminal prosecution for steps that, had they occurred, would have extinguished the corporation.

In addition Treasury Regulation § 1.1361–1(b)(3) expressly provides:

> For purposes of subchapter S, stock that is issued in connection with the performance of services (within the meaning of § 1.83–3(f)) and that is substantially nonvested (within the meaning of § 1.83–3(b)) is not treated as outstanding stock of the corporation, and the holder of that stock is not treated as a shareholder solely by reason of holding the stock, unless the holder makes an election with respect to the stock under section 83(b). In the event of such an election, the stock is treated as outstanding stock of the corporation, and the holder of the stock is treated as a shareholder for purposes of subchapter S.

Code § 83(b) provides that the recipient of stock transferred in connection with the performance of services must elect to include the value of the stock in gross income. Such an election requires the recipient of the stock to file a formal statement with the IRS. *See* Treas. Reg. § 1.83–2(c)–(e). There is nothing in the Indictment, any responses to requests for particulars, or in the prosecution's opposition alleging that Boyle ever elected to become a shareholder of DPC. This authority means that even if Boyle enjoyed a percentage of the share of profits from the DPC–Croton leasehold, without an election, Pirro cannot be said to have violated a known legal duty—at least one imposed by the IRS Code and Regulations—in failing to reflect Boyle's interest on DPC's Return or its Schedule K–1.

## CONCLUSION

For the foregoing reasons, defendant's motion to strike subpart (2) of paragraph 56 of Count 67 of the Indictment is granted. The issue of the evidence properly admissible under the remaining allegations of the Count is reserved for trial.

**SO ORDERED.**